EMMELINE MEAD, AN INCOMPETENT, BY HER GUARDIAN, v. MARY E. HARRIS.

*Witness — Mental competency — Instructions to jury — Pleading — Set-off.*

1. Upon objection being made that a witness is mentally incompetent to testify, it is the duty of the court to determine that question before submitting the testimony to the jury.

2. If a witness who is mentally weak or immature can give lucid, connected testimony, it should be admitted, and the question of the weight of such evidence is for the jury, under proper instructions.

3. The charge, taken as a whole, is held not open to the criticism that it had a tendency to deter jurymen from enforcing their ideas, or adhering to their honest opinions, if they found themselves in the minority.

4. Plaintiff sued to recover $500 which she claimed was taken from her by the defendant. On the trial it appeared that, at the instance of the defendant, the plaintiff, shortly after the alleged taking of the money, was removed from defendant's house to a hospital, and placed under guardianship as a mentally incompetent person. The defendant, although denying that she took the money, offered testimony to show that she thereafter expended a considerable sum for and in behalf of the plaintiff, and claimed that she was entitled to withhold this amount in any event. And it is held that, if defendant paid out money for the use and benefit of the plaintiff, she must look for it in some other forum, as no notice of set-off in this proceeding was given.

Error to Wayne. (Frazer, J.)     Argued June 21, 1894. Decided September 25, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion. ·

*Orla B. Taylor* (*Henry M. Cheever,* of counsel), for appellant.

*James H. Pound,* for plaintiff.

LONG, J. It is claimed by the plaintiff that on March 14, 1892, she took from the bank the sum of $500, and · went to see a justice of the peace, before whom her three children were to be tried for assault and for making threats. From there she went to see her sister, the defendant in this case, to obtain her assistance in getting a warrant for the arrest of the school teacher who had caused the arrest of her children. Plaintiff and defendant went to Wayne, and obtained a warrant, and returned to defendant's house in the evening, where she stayed over night, sleeping with defendant's daughter. The next morning she was removed to Harper Hospital, and subsequently a guardian was appointed for her. Plaintiff's claim is that, upon her return from Wayne to defendant's house, defendant and her daughter took the $500 from

her. This suit is brought to recover the money so taken. Defendant denied having taken the money. On the trial the court directed the jury, substantially, that if they found that defendant took the money, as claimed by plaintiff, they should return a verdict in her favor. The jury found in favor of the plaintiff.

It was also claimed that the plaintiff was an incompetent person, and when she was placed upon the witness stand counsel for defendant objected to her being sworn as a witness for that reason. The court admitted the testimony, saying:

"I do not know if we can try the question of competency here. I can instruct the jury that if they find this witness is mentally incompetent they can consider her testimony of no value."

In this, it is contended, the court erred; that it was the duty of the court to determine whether she was competent to testify, before her testimony could be submitted to the jury.

The court charged the jury substantially that the claim was made that the witness was out of her mind at the time the money was said to have been taken, and that testimony to that effect had been admitted for the purpose of allowing the jury to judge of the probability of her remembering what she stated had happened upon that occasion; that, if they found that she remembered what she claimed to have remembered, her condition of mind was not such that she was laboring under any delusion, and they should give her testimony the same weight as that of any other witness, but that if they believed that the plaintiff at that time was demented, or laboring under a delusion, or in any manner incompetent to remember what happened, they should consider that fact; that the jury were to get at the real truth of the controversy, and if they believed from the testimony that plaintiff had this

money, and took it to the house of defendant, and the defendant obtained it from her, and refused to account for it, the plaintiff would be entitled to recover; that this must be proved by a preponderance of evidence; but that, on the other hand, if they should find that she did not have this money, or that it did not come into the possession of the defendant, they should find a verdict for the defendant.

The charge was very fair to the defendant in all its parts, and it seems to us that the objection made by her counsel, and the request asked by him, were not that the court should first determine the competency of the plaintiff, but that the court should refuse to allow the plaintiff to be sworn, on the ground that defendant's counsel claimed that she was incompetent. From the whole case we are satisfied that the court must have believed at the outset that the plaintiff was competent to testify, and he fairly submitted to the jury the question as to the weight they were to give her testimony. It is undoubtedly the rule that it is the duty of the court to determine whether a witness is competent to testify before such testimony can be submitted to the jury; but it is also settled that if a witness who is mentally weak or immature can give lucid, connected testimony, the court should admit it, and the question of the weight of such evidence is for the jury, under proper instructions. *Washburn v. People,* 10 Mich. 372; *McGuire v. People,* 44 Id. 286; *People v. White,* 53 Id. 538. Being convinced that the court below was satisfied of the competency of the witness to testify, we see no reason why the case should be reversed upon the claim here made.

It is said, however, that there was some testimony that defendant expended a considerable part of this money for and in behalf of the plaintiff; that she paid the hospital authorities $6, and the Sisters at the Retreat $30; and it

is claimed that defendant was entitled to withhold this amount in any event, and that the court should have so instructed the jury. As has been seen, the defendant, all the way through the trial, denied positively having had this $500, or any part of it. If she has paid out money for the use and benefit of the plaintiff, she must look for it in some other forum, as no notice of set-off in this proceeding was given.

It is claimed that the court was in error in a certain portion of his charge to the jury, in which he said:

"No captious doubts, no foolish or unwarranted ideas, should enter into the consideration of this case or any other case that you shall have to determine. As honest men, trying to discharge your duty between these people, you are to give the matter fair consideration. Stubbornness, mulishness, is no good characteristic of jurymen. No juryman is entitled to enforce his dishonest opinions upon his fellows. Take this case, under these views, under your consideration, and give it such fair, candid, and honest consideration as 12 conscientious, honest men ought to do, and render a verdict as you shall believe the preponderance of testimony is in this issue."

The criticism upon this charge is that it had a tendency to deter jurymen from enforcing their ideas, or adhering to their honest opinions, if they found themselves in the minority. We do not think the charge open to this criticism, but that the portion quoted, taken in connection with the remainder of the charge, did no injustice to the defendant.

Judgment is affirmed.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.