PEOPLE v. PERCIN.

SAME v. CLAEYS.

1. EXTORTION—EVIDENCE—POLICEMEN.

Evidence sustained guilt of crime of extortion by each of 2 policemen beyond a reasonable doubt (CL 1948, § 750.213).

2. SAME—THREATS—FURNISHING LIQUOR TO MINORS—INTENT.

Contention that threats of defendant policemen to complainants were so unintelligible that one of latter did not know he was being threatened with crime was without merit, where defendants did maliciously threaten to accuse the complaining witnesses of furnishing alcoholic beverages to . .a minor with intent to extort money from such witnesses (CL 1948, §§ 436.33, 750.213).

3. SAME—ELEMENTS.

There are 2 elements to the crime of extortion, the threat to accuse of a crime or offense and the intent to extort money (CL 1948, § 750.213).

4. SAME—EVIDENCE—INTENT.

Conviction was proper under first count of information in which it was charged that defendants maliciously threatened to accuse complainants of giving and furnishing alcoholic beverages to a named minor with intent to extort money from them, where evidence presented matter to jury of whether the necessary intent was shown (CL 1948, §§ 436.33, 750.213).

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 22 Am Jur, Extortion and Blackmail, § 5.
[3, 5] 22 Am Jur, Extortion and Blackmail, § 2.
[6] 22 Am Jur, Extortion and Blackmail, § 3.
[7] 27 Am Jur, Indictment and Information, § 190.
[8] 22 Am Jur, Extortion and Blackmail, § 12.
[10] 22 Am Jur, Extortion and Blackmail, § 15.

5. SAME—GIST OF OFFENSE.

The gist of the offense of extortion is the attempt to extort money from another individual and it is unnecessary to consider the effect of threats upon the complainant (CL 1948, § 750.213).

6. SAME—POLICEMEN—COMMISSION OF OFFENSE OF RECEIVING REWARD FOR FAILURE TO PERFORM DUTY.

Police officers were properly charged with, and convicted of, the felony of extortion, notwithstanding that by their extortion they incidentally committed the crime of accepting a reward for the failure to perform their duty, a misdemeanor, and of an entirely different nature (CL 1948, §§ 750.123, 750.213).

7. INDICTMENT AND INFORMATION—SUFFICIENCY—ELECTION BETWEEN COUNTS.

Whether or not second count of information charged an offense need not be determined, where first count was good, the 2 counts were not inconsistent, both arose out of the same transaction and were provable by the same testimony, there being no need for an election between counts, the first count being sufficient to sustain the verdict.

8. EXTORTION—PRESENCE OF EACH DEFENDANT AT PAYMENT OF MONEY.

The crime of extortion by malicious threat to accuse complaining witnesses with intent to extort money was complete before the money was actually paid, hence defendant who was not present when other defendant actually received payment was also properly found guilty, where evidence showed each defendant, a policeman, participated in the commission of the crime (CL 1948, § 750.213).

9. SAME—INSTRUCTION.

Instruction given in prosecution of 2 policemen for extortion *held,* eminently fair and without error (CL 1948, § 750.213).

10. SAME—THREAT OF CRIME—READING OF INFORMATION TO JURY.

Reading of information to jury sufficiently apprised it of the crime with which defendant policemen had threatened to accuse the complainants, where the information included the specific threat and averred that it was a crime (CL 1948, § 750.213).

Appeal from Recorder's Court for City of Detroit; Gillis (Joseph A.), J. Submitted January 11,

1951. (Docket Nos. 67, 68, Calendar Nos. 44,436, 44,581.) Decided April 3, 1951.

Albin Percin and Raymond Claeys were convicted of threatening to accuse others of an offense with intent to extort money. Affirmed.

*Joseph W. Louisell,* for defendant Percin.

*Thaddeus M. Machrowicz,* for defendant Claeys.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Joseph A. Sullivan,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J. This is an appeal from a conviction on the charge of extortion. The 2 counts of the information are as follows:

First, "That Albin Percin and Raymond Claeys * * * on the 16th day of August, A.D. 1947 and on divers other days and dates between said date and the 20th day of August A.D. 1947 * * * did * * * orally and maliciously threaten to accuse others, to-wit: Bernard Kosmol and Henry Pokroppa, of a certain crime and offense, to-wit: giving and furnishing alcoholic beverages to one Clarence Ryan, being * * * a minor [1] * * * with the intent to extort money from and compel the said Bernard Kosmol and Henry Pokroppa to give to them * * * the sum of * * * $200; contrary to the form of the statute, et cetera"; and

Second, "By * * * orally and maliciously threatening to report to the liquor control commission of the State of Michigan the sale of alcoholic liquors * * * to one Clarence Ryan * * * which

---

[1] See CL 1948, § 436.33 (Stat Ann 1949 Cum Supp § 18.1004).— REPORTER.

said report would result in the penalty of  *  *  *
$300 and a  *  *  *  30-day suspension of the license
of said Bernard Kosmol and Henry Pokroppa,  *  *  *
with the intent thereby to extort  *  *  *  the sum of
*  *  *  $200; contrary to the form of the statute."

The statute reads:

"Any person who shall  *  *  *  maliciously threaten to accuse another of any crime or offense, or shall
*  *  *  maliciously threaten any injury to the person
or property  *  *  *  of another with intent thereby
to extort money or any pecuniary advantage whatever,  *  *  *  shall be guilty of a felony, punishable
by imprisonment."    CL 1948, § 750.213 (Stat Ann
§ 28.410).

Percin and Claeys, defendants, were police officers
of the Detroit police department. On Saturday,
August 16, 1947, they approached Bernard Kosmol,
owner with Henry Pokroppa of the Rhein Bar in
Detroit, and told him that they knew he had been
serving liquor to a minor, one Ryan, then 19 years
of age.  Percin said that they had not turned the
matter over to the inspector.  Claeys stated that if
it were reported to the liquor control commission,
Kosmol could be fined $300 and have his license suspended for 30 days.  They asked how much their
silence was worth to him.  Kosmol told the defendants that he would have to speak to his partner and
asked the defendants to come back on Monday.  Defendants returned on Monday and spoke to Pokroppa, Kosmol not being present.  It was agreed
that $200 would be paid.  When they returned on
Tuesday, Kosmol put them off until the following
day.  Percin could not come on Wednesday and
Claeys was to come alone.  Kosmol reported what
had occurred to the police department, and when
Claeys came in on Wednesday there were 2 inspectors hidden and waiting for him. Kosmol gave

Claeys an envelope with marked bills in it, and after Claeys took the envelope he was arrested, the inspectors having witnessed the transaction. Percin was arrested later.

Kosmol, although in this country for some 27 years, could not speak English with ease or fluency, and at the trial some of his answers were confusing. The defendants, by introducing the records of the examination, demonstrated that he was confused as to which of the officers had made the statements at the original meeting, some of which he credited to Percin at the trial, although at the examination he stated Claeys had made them. However, the substance of his testimony remained unshaken during the cross-examination. Imperfect as it was, Kosmol's testimony when combined with the testimony of the other witnesses provided ample evidence which, if believed by the jury, established the guilt of each defendant beyond a reasonable doubt.

In *People* v. *Jones,* 62 Mich 304, we said:

"Vague threats are sometimes made; but, unless they indicate to the person threatened some charge which is intelligible, it has not been considered that a criminal offense is made out under the statute."

Kosmol testified that he did not know that selling liquor to minors was a crime; he thought it was merely an infraction of the rules of the liquor commission. The defendants contend that the threats were so unintelligible that Kosmol did not know he was being threatened with accusation of a crime and for that reason there was no crime committed. This contention is without merit.

There are 2 elements to the crime of extortion, the threat to accuse of a crime or offense, and the intent to extort money. In examining the information in *People* v. *Jones, supra,* the Court found that no specific threat was included. The Court stated that gen-

eral allegations of a threat were insufficient, for. there must be a specific threat before a crime has been committed. In the instant case, the specific threat to charge the complainants with selling liquor to a minor was alleged in the information and shown at the trial. As to whether the necessary intent was shown was a question to be decided by the jury from the facts before them. In *People* v. *Braman,* 30 Mich 460, Justice COOLEY said:

"If the meaning of the communication were doubtful, the intent would be a question for the jury."

There was no error in the conviction under the first count.

We find it unnecessary to consider the effect of these threats upon the complainants in reaching our conclusion. As the court said in *Commonwealth* v. *Corcoran,* 252 Mass 465, 483 (148 NE 123):

"The gist of the offense described in the statute is the attempt to extort money. *Commonwealth* v. *Goodwin,* 122 Mass 19, 33. If the threat be of the kind referred to in the statute, and is made with the intent thereby to extort money, or with the intent to accomplish any of the other objects mentioned therein, the crime has been committed. The language is explicit and is not subject to any exceptions or qualifications. The legislature did not make the commission of the offense dependent upon the state of mind of the person threatened, and there is no occasion for reading into the statute qualifications not there found. If it had been intended that to constitute the offense the person threatened was intimidated or must have understood and appreciated the fact that he was so threatened with the intent to extort money from him, or to accomplish any other purpose set forth in the statute, it is the rational inference that it would have been so declared. *People* v. *Thompson,* 97 NY 313, 318."

See, also, *O'Neil* v. *State,* 237 Wis 391 (296 NW 96, 135 ALR 719).

The above quoted passage applies with equal force to the Michigan statute.

Defendants contend that they were tried under the wrong statute, and that they should have been tried under CL 1948; § 750.123 (Stat Ann § 28.318), which says in part:

"Any * * * officer authorized to serve process or arrest or apprehend offenders against criminal law who shall receive from a defendant or from any other person any money * . * * as a consideration, reward or inducement, for omitting or delaying to arrest any defendant, or to carry him before a magistrate * * * or for omitting or delaying to perform any duty pertaining to his office, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than 6 months or by fine of not more than * * * 250 dollars."

Defendants claim that this misdemeanor statute applies to police officers and that the extortion statute applies to everyone, and, therefore, it was clearly the legislative intent to punish police officers under the misdemeanor statute only. We need only consider the most obvious of several answers to this claim. The extortion statute punishes for the malicious threat with the intent to extort. These 2 offenses are of a completely different nature, and it is frivolous to suggest that the legislature intended that police officers be treated more leniently than ordinary citizens merely because, by their extortion, they incidentally committed the crime of accepting a reward for the failure to perform their duty.

It is also contended that there was no violation of the second count in the information. This count accused the defendants of the threat to injure the property of the complainant and defendants claim

that the injury threatened was not visible tangible property. Though distinct in point of law, "the two counts did not charge inconsistent offenses. Both arose out of the same transaction, both were provable by the same testimony, only one time, place and subject being involved." *People* v. *Lowenstein,* 309 Mich 94, 99. There was no need for an election of counts. *People* v. *Mathews,* 207 Mich 526, 535; *People* v. *McKinney,* 10 Mich 54.

"Where 1 of 2 counts is bad and the other good, a general verdict of guilty will be sustained as to the good count." 1 Gillespie, Michigan Criminal Law and Procedure, § 568.

We find it unnecessary to discuss the second count, since the first count is sufficient to sustain the verdict. *People* v. *McKinney, supra; Shannon* v. *People,* 5 Mich 71.

Defendant Percin, who was not present when the money was paid, alleged 2 additional grounds for reversal. First, that the evidence was insufficient to convict him, and second, that the court erred in its instructions to the jury. These contentions are predicated on the theory that the crime was not completed until the money was handed over, and that Percin, not being then present, was not a principal to the crime. It is clear that the crime was complete before the payment, and that both defendants participated in its commission. As we said before there was sufficient evidence to support the finding of the jury. We have examined the charge most carefully and find that the court was eminently fair, and that there were no errors in the instructions.

Finally, it is contended that the jury was never told of what crime the defendants had threatened to accuse the complainants. The court, in its charge to the jury read the information which included the

specific threat and averred that it was a crime. There was no error.

The judgment is affirmed.

Reid, C. J., and Boyles, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.