# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 8, 2024          Decided December 9, 2024

No. 16-3009

UNITED STATES OF AMERICA,
APPELLEE

v.

BRYAN BURWELL, ALSO KNOWN AS BUSH,
APPELLANT

———

Consolidated with 16-3072, 21-3041, 23-3031, 24-3017

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:04-cr-00355-5)
(No. 1:04-cr-00355-6)

———

*Courtney Millian*, Assistant Federal Public Defender, argued the cause for appellant Aaron Perkins. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Sandra G. Roland*, Assistant Federal Public Defender, entered an appearance.

*Gregory Stuart Smith*, appointed by the court, argued the cause and filed the briefs for appellant Bryan Burwell.

*Timothy R. Cahill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Matthew M. Graves*, U.S. Attorney, and *Chrisellen R. Kolb* and *Elizabeth H. Danello*, Assistant U.S. Attorneys. *Katherine M. Kelly*, Assistant U.S. Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: For nearly twenty years, Bryan Burwell and Aaron Perkins have served prison sentences for their involvement in a series of bank robberies. Much of that time has been for firearms-related convictions that they now argue are erroneous. We agree.

Congress mandates that people convicted of using a firearm during and in relation to a crime of violence be sentenced to a minimum period of incarceration. 18 U.S.C. § 924(c). Sometimes for decades. But "crime of violence" is a term of art. It encompasses only offenses that, categorically speaking, involve the use or threatened use of force. Put differently, if the least culpable conduct that could sustain a conviction for a given crime does *not* necessarily require the use or threat of force, that offense is not a crime of violence and § 924(c)'s firearm sentencing enhancement cannot apply. That's true even when a judge sentences an individual convicted of using force or violence in the commission of that crime in a particular case.

This appeal concerns whether federal bank robbery, 18 U.S.C. § 2113(a), is a crime of violence under § 924(c). The statute criminalizes bank robbery completed "by force and violence, or by intimidation," or "by extortion." *Id.* Our precedent holds that when done by force and violence, or by intimidation, bank robbery satisfies § 924(c)'s requirements. *United States v. Carr*, 946 F.3d 598, 599 (D.C. Cir. 2020). Yet all parties here agree that when done by extortion, bank robbery no longer is a crime of violence, because extortion need not involve the use or threat of force. Thus, the answer to the question turns on another: whether, in writing § 2113(a), Congress created two separate criminal offenses, one violent (done by force and violence, or by intimidation) and the other not (done by extortion). If so, the statute is divisible, and Burwell's and Perkins's sentences must stand. If not, the statute is indivisible and merely sets forth three alternative means—force and violence, intimidation, and extortion—of completing the same crime.

We hold that 18 U.S.C. § 2113(a) is indivisible as to extortion. Force and violence, intimidation, and extortion are three ways a person might rob a bank. The text and structure of the statute indicate that extortion is a factual means of bank robbery, rather than an element of an entirely separate offense. That conclusion is reinforced by the statutory history and common law roots of robbery and extortion. As an indivisible offense, bank robbery is not a § 924(c) crime of violence, and Burwell's and Perkins's convictions under that provision are unlawful. We therefore vacate Burwell's and Perkins's § 924(c) convictions, and because both have served their entire sentences on their remaining counts of conviction, we remand the case to the District Court with instructions to determine expeditiously whether to release them immediately.

## I.

### A.

In August 2004, Bryan Burwell and Aaron Perkins were indicted, along with several other co-defendants, in the United States District Court for the District of Columbia for their role in a series of six local bank robberies. The government concedes that neither Burwell nor Perkins were leaders in the robbery scheme. Noureddine Chtaini, the group's "nominal leader," and two others purchased machineguns to use in the spree. *United States v. Burwell*, 690 F.3d 500, 502 (D.C. Cir. 2012) (en banc). Burwell later participated in two of the six bank heists, performing "crowd control" in each. According to a presentence investigation report, Perkins participated in just the final robbery but stayed outside the bank the entire time. Chtaini and another leader pleaded guilty before trial and agreed to testify against Burwell, Perkins, and others in exchange for lesser sentences and dismissal of certain charges—including the 18 U.S.C. § 924(c) offense at issue here. A jury convicted Burwell and Perkins of four counts each. Relevant to this appeal are both of their convictions under § 924(c) for using or carrying a machinegun during and in relation to any crime of violence. The District Court had no choice but to sentence Burwell and Perkins on these counts alone to the statutory mandatory minimum of thirty years in prison, to run consecutive to any sentence imposed on the remaining counts. *Burwell*, 690 F.3d at 503; 18 U.S.C. § 924(c)(1)(B)(ii).

Following trial, our Court affirmed Burwell's and Perkins's convictions. *United States v. Burwell*, 642 F.3d 1062, 1064 (D.C. Cir. 2011). After rehearing *en banc*, we affirmed again. *Burwell*, 690 F.3d at 516. Now, these cases come before us on post-conviction review, as both Burwell and

5

Perkins lodge challenges that they did not make (and, indeed, could not have made) at earlier junctures. Burwell raises two issues and Perkins raises one. Both argue that in light of the Supreme Court's decision in *United States v. Davis*, 588 U.S. 445 (2019), bank robbery is not a crime of violence for § 924(c) purposes, meaning that the thirty-year mandatory minimum should never have applied. Burwell further argues that his § 924(c) conviction independently must be vacated because the aiding and abetting jury instruction given at his trial on that charge was erroneous under *Rosemond v. United States*, 572 U.S. 65 (2014). Because we vacate both Burwell's and Perkins's § 924(c) convictions on the *Davis* issue, we need not reach the *Rosemond* claim.

**B.**

This case implicates both § 924(c)'s firearm sentencing enhancement and the federal bank robbery statute. The former requires judges to impose a thirty-year mandatory minimum whenever a "person who, during and in relation to any crime of violence . . . uses or carries a firearm" that is "a machinegun." 18 U.S.C. § 924(c)(1)(A), (B)(ii). When Burwell and Perkins were convicted, § 924(c) contained both an "elements clause" and a "residual clause." Under the elements clause, an offense is considered a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). The residual clause applied whenever an offense "by its nature, involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Davis*, 588 U.S. at 449 (quoting 18 U.S.C. § 924(c)(3)(B) (internal quotation marks omitted)). The *Davis* Court held that the residual subsection was unconstitutionally vague under the Due Process Clause. *Id.* at

470. As a result, these § 924(c) convictions must stand, if at all, based upon the "elements" clause.

We apply the categorical approach to determine whether an offense in question satisfies § 924(c)'s elements clause. *United States v. Taylor*, 596 U.S. 845, 850 (2022). If the least culpable conduct under the statute involves the use or threat of force, the offense counts as a crime of violence and the mandatory minimum applies. If it doesn't, the offense is not § 924(c)-eligible, "even if the defendant's actual conduct (*i.e.*, the facts of the crime)" involved the use or threat of physical force. *Mathis v. United States*, 579 U.S. 500, 504 (2016) (applying same approach for 18 U.S.C. § 924(e)(1)).

The second statute, which makes bank robbery a federal crime, was amended in 1986. Before then, federal bank robbery only reached those who took or attempted to take anything of value from certain financial institutions "by force and violence, or by intimidation." 18 U.S.C. § 2113(a) (1982). In 1986, Congress wrote the statute we interpret today. It now defines bank robbery to cover:

> [w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, *or obtains or attempts to obtain by extortion* any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association.

18 U.S.C. § 2113(a) (emphasis added); *see also* Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. 99-646, § 68, 100 Stat. 3592, 3616.

## C.

Burwell and Perkins both raised *Davis* claims before the District Court. Burwell timely filed his postconviction challenge alleging that his sentence was "imposed in violation of the Constitution or laws of the United States" because 18 U.S.C. § 2113(a) is indivisible. 28 U.S.C. § 2255(a). Perkins raised the same argument in a second or successive § 2255 motion, which this Court in 2016 permitted him to file. The District Court denied both motions.

We have jurisdiction under 28 U.S.C. § 2253(a) and review *de novo* whether an offense qualifies as a crime of violence. *United States v. Sheffield*, 832 F.3d 296, 311 (D.C. Cir. 2016).

## II.

Deciding whether federal bank robbery is a crime of violence turns on the antecedent issue of whether the provision is indivisible. Recall that 18 U.S.C. § 2113(a) prohibits anyone who "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion" anything of value from certain banks or financial institutions. Our precedent concludes that when bank robbery is completed "by force and violence, or by intimidation," *id.*, it is a crime of violence. *Carr*, 946 F.3d at 599, 602–04. But the parties here agree that when completed by extortion, bank robbery does not necessarily involve the use or threatened use of force. *See* Appellee's Br. 18 n.8. This is because extortion can be accomplished using a threat of something other than violence, such as a threat of economic loss or a threat to reveal compromising information. Thus, the question becomes: Did Congress intend § 2113(a)'s first paragraph to be split into two

crimes, one violent and the other not? Or, as the doctrine calls it: Is the statute divisible or indivisible? If the latter, Burwell's and Perkins's firearms convictions and sentences cannot stand and must be vacated.[1]

An "indivisible" statute sets out just one "set of elements to define a single crime." *Mathis*, 579 U.S. at 504–05. A "more complicated" divisible statute "may list elements in the alternative, and thereby define multiple crimes." *Id.* at 505. In § 2113(a), the statute is indivisible if extortion—like force, violence, and intimidation—is just one of several means of committing one crime: bank robbery. Subsection 2113(a) is divisible if bank robbery by extortion is an entirely separate crime from committing bank robbery by force and violence or by intimidation.

*Mathis* instructs us how to resolve divisibility questions. To decide whether the listed items (here, force and violence, intimidation, and extortion) are elements or means, we start with the text at issue. In its divisibility analysis, the Supreme Court directed federal courts to consult two further sources when the statutory text alone does not provide a clear answer: state court decisions interpreting the statute's language and

---

[1] Burwell and Perkins were convicted under 18 U.S.C. § 2113(a) and (d). The Tenth Circuit has held that notwithstanding any indivisibility within § 2113(a), a conviction that includes subsection (d) is categorically a crime of violence. *United States v. Lucero*, 860 F. App'x 589, 594 (10th Cir. 2021) (unpublished order denying certificate of appealability). As the government concedes in its brief, it did not defend the § 924(c) conviction based upon § 2113(d) in the District Court, and because that issue was not included in the certificate of appealability, it is not before us. Appellee's Br. 17 n.6. However, the government "reserve[d] the right to argue that § 2113(d) may affect the crime-of-violence determination in an appropriate future case." *Id.*

record documents like indictments or jury instructions. *Mathis*, 579 U.S. at 517–18 & n.7. The Court in *Mathis* answered whether the elements of a state law offense corresponded to the generic federally enumerated offense as required to satisfy the predicate requirement for a sentence enhancement under the Armed Career Criminal Act ("ACCA"). *See* 18 U.S.C. § 924(e). Here, unlike an ACCA case, we interpret a federal statute's divisibility to determine whether a violation necessarily qualifies as a "crime of violence" under § 924(c). We take no position on the pertinence of resorting to those additional sources to settle the divisibility of federal statutes, as here the text and routine tools of statutory interpretation provide a clear answer that is not contradicted by any well-reasoned precedent or by record documents: § 2113(a) is indivisible as to extortion and, therefore, not a crime of violence under § 924(c). Reinforcing our conclusion are the common law roots of robbery and extortion, as well as the statutory history of the 1986 amendment. At bottom, there is one indivisible bank robbery offense in § 2113(a), carried out by means of force and violence, intimidation, or extortion.

## A.

We interpret statutes by examining first the text and statutory context. *Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024) (citing *Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020); *Petit v. U.S. Dep't. of Educ.*, 675 F.3d 769, 781 (D.C. Cir. 2012)). Multiple indicators support reading § 2113(a) as indivisible.

Start with the plain text. Subsection 2113(a) provides a single maximum penalty regardless of how a bank robbery is completed. Whether one is convicted for robbing a bank by force and violence, intimidation, or extortion, their maximum penalty may not exceed twenty years in prison. 18 U.S.C.

§ 2113(a). Consistent with *Mathis*'s instruction that statutory alternatives carrying *different* punishments must be elements of a divisible statute, 579 U.S. at 518, we believe the inverse at least points toward the opposite conclusion: when legislators attach the same punishment for statutory alternatives, that provides meaningful evidence that the provision may be indivisible. *See United States v. Redd*, 85 F.4th 153, 165 (4th Cir. 2023) (finding that statute spread out across two subsections was indivisible in part because punishment was the same); *cf. United States v. Buck*, 23 F.4th 919, 925 (9th Cir. 2022) (finding basic and aggravated offenses in 18 U.S.C. § 2114(a) divisible and collecting cases).

That inference alone is not dispositive. Both the first and second paragraphs of § 2113(a) (bank robbery and bank burglary) carry the same punishment, and Burwell and Perkins concede the two are separate offenses. Perkins Br. 21; *see also United States v. Butler*, 949 F.3d 230, 234 (5th Cir. 2020) (holding § 2113(a) is divisible between its two paragraphs). But here, reinforcing bank robbery's indivisibility as to extortion are the structural and syntactical choices Congress made when redrafting the provision. Subsection 2113(a) locates "obtains or attempts to obtain by extortion" in a list inside a single paragraph. 18 U.S.C. § 2113(a). And, Congress's use of "by" before extortion mirrors "by force and violence" and "by intimidation," the other two means of committing bank robbery. *Id.*

Congress had other options. Rather than create a separate paragraph, as it did with the second paragraph for bank burglary in § 2113(a), or a separate subsection, as it did for bank larceny in § 2113(b) and receipt of stolen bank property in § 2113(c), Congress chose to group extortion together with force and violence and intimidation in the same paragraph of the bank robbery statute. 18 U.S.C. § 2113(a)–(c). Indeed, the

title of Section 2113 is "Bank robbery and incidental crimes." Congress opted to not penalize obtaining money from a bank by extortion as an incidental (*i.e.*, separate) crime from bank robbery, like it did with bank larceny and receiving stolen bank property. That choice further suggests the statute is indivisible between bank robbery by force and violence, intimidation, and extortion. *Cf. Butler*, 949 F.3d at 234 (reasoning that the disjunctive "or" between § 2113(a)'s paragraphs is different than the use of "or" within the paragraph, and "*[t]he paragraphs use 'or' internally to set out alternative means*" (emphasis added)).

Congress's other syntactical choices confirm our reading. For one, the amended § 2113(a) naturally places a comma before extortion, as it does between force and violence and intimidation, rather than more disjunctive punctuation like a semicolon. *See Buck*, 23 F.4th at 925 (noting that divisible clause is set off by semicolon); *United States v. Enoch*, 865 F.3d 575, 580 (7th Cir. 2017) (same). The lack of a comma after the extortion clause also bears noting: If "or obtains or attempts to obtain by extortion" was a distinct element of a separate crime, then a comma would naturally follow the word "extortion" to set off the clause. The absence of such a comma instead denotes a third factual means in a list of ways to acquire the property described in the rest of the paragraph. And, the text does not set out separate *mens rea* requirements for what the government claims are two purportedly distinct offenses, which in other statutes can suggest divisibility. *See Martin v. Kline*, No. 19-15605, 2021 WL 6102175, at *1 (9th Cir. Dec. 22, 2021) (unpublished mem. op.). Subsection 2113(a)'s first paragraph thus lacks many of the characteristics that would plainly suggest it is divisible.

Instead, the plain text of § 2113(a)'s first paragraph criminalizes *how* someone unlawfully comes into possession

of bank property—either by taking or attempting to take by force, violence, or intimidation; or by obtaining, or attempting to obtain bank property by extortion. 18 U.S.C. § 2113(a). The fact that "intimidation" and "extortion" are synonyms is strong evidence that Congress viewed extortion and intimidation as alternative means to commit bank robbery. *See, e.g.*, *Intimidation*, BLACK'S LAW DICTIONARY (5th ed. 1979) ("Intimidation. Unlawful coercion; extortion; duress; putting in fear."); *Extort*, OXFORD ENGLISH DICTIONARY (2d ed. 1989) (defining "extort" as "[t]o obtain from a reluctant person by violence, torture, intimidation"). The statute therefore is best read to contain two distinct elements: coming into possession of bank property and the unlawful means by which that occurs. *Cf. United States v. Al-Muwwakkil*, 983 F.3d 748, 756–57 (4th Cir. 2020) (finding Virginia's attempted rape statute indivisible because it was "best read" to boil down to "(1) carnal knowledge (a sexual act)[] and (2) unwillingness," even though the act itself could be done different ways). Indeed, the 1986 amendment was titled "Addition of Extortion to Bank Robbery Offense," § 68, 100 Stat. at 3616, which suggests that Congress intended to "add" extortion to the extant offense of bank robbery, rather than to create a new separate and distinct bank extortion offense. *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)).

The text, structure, and statutory history make clear that § 2113(a) is indivisible. That clarity resolves this case.[2] We

---

[2] Burwell separately invokes the rule of lenity. Lenity does not apply here because "to invoke [it], a court must conclude that 'there is a *grievous* ambiguity or uncertainty in the statute.'" *Burwell*, 690 F.3d

note, however, that the 1986 amendment's legislative history supports our reading of the statute. *Noble*, 103 F.4th at 50. The House Report accompanying the 1986 revision noted that, prior to the amendment, federal courts were "divided over the question whether [§ 2113(a)] proscribe[d] extortionate conduct." H.R. REP. NO. 99-797, at 32 (1986). Some courts held bank robbery by extortion could be prosecuted only under § 2113(a), whereas others held the Hobbs Act (18 U.S.C. § 1951(a)) was more appropriate, and still others found that either statute could apply. *Id.* The report concluded that "[t]here is no gap in federal law. Extortionate conduct is prosecutable [under] either." *Id.* In other words, the report explains that bank robbery by extortion was covered by the pre-existing statutory language—meaning even before the 1986 amendment, extortion, just like "force and violence" and "intimidation," was simply another means of committing the same crime. Congress merely "clarifi[ed]" that § 2113(a) would be the only statute covering bank robbery and inserted "obtain by extortion" to "expressly" cover what the statute always did. *Id.* at 33. In that way, the 1986 amendment was not creating an altogether separate offense.

The legal context that Congress considered in its 1986 amendment confirms the legislature's conviction that extortion is a third means of committing the single offense of bank robbery. As explained above, Congress amended § 2113(a) to resolve a disagreement among the courts of appeals regarding the proper statute for prosecuting "extortionate activity involving the obtaining of bank monies." *Id.* The cases cited in the House Report, to which Congress's revision responded, all involved a defendant threatening to harm a bank executive's

---

at 515 (quoting *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)) (emphasis in *Burwell*). For the reasons discussed above, § 2113(a) is not "grievously" ambiguous and the rule is inapplicable.

home, wife, or children unless the executive delivered bank cash to a specified location. *Id.* at 32 nn.13–16. The fact that those cases only concerned extortion as it was used to extract money from federally insured banks underscores Congress's intent to clarify that § 2113(a) treats all coercive conduct aiming to "get money from the bank" the same, whether technically classified as robbery or as extortion. *United States v. Golay*, 560 F.2d 866, 869 n.3 (8th Cir. 1977). Put differently, those cases show that Congress viewed bank robberies effected by extortion as equivalent to bank robberies effected by force and violence or by intimidation: all are unlawfully coercive means to "obtain[]. . . bank monies." H.R. REP. NO. 99-797, at 33.

**B.**

The government's primary argument is that § 2113(a) is divisible because robbery and extortion were distinct crimes at common law, and Congress imported this "old soil" first into the Hobbs Act and then later into the bank robbery provision. Appellee's Br. 14–16, 20–24. This argument rests on two propositions. First is the strength of the common law difference between robbery and extortion, and second is the assumption that Congress wanted any such differences carried into the federal criminal law's understanding of the Hobbs Act and § 2113(a).

The government falters at both steps. Upon inspection, neither argument it raises is persuasive, and instead, the common law and statutory history confirm § 2113(a) is indivisible. As for the historical differences between robbery and extortion, the government sees common law robbery as a "taking of property 'from the person or in the presence of another, against his will,'" Appellee's Br. 15 (quoting *Ocasio v. United States*, 578 U.S. 282, 297 (2016)), that is precipitated

by the "use of force or threatened force," *id.* (quoting *United States v. Harris*, 916 F.3d 948, 955 (11th Cir. 2019)). The latter requirement, in the government's view, means that common law robbery "embraced only threats of immediate bodily harm to the victim." *Id.* (quoting *Harris*, 916 F.3d at 955).

But the government's premise that common law robbery "embraced only threats of immediate bodily harm to the victim" is flat wrong. As Blackstone explained, robbery is the "felonious and forcible taking from the person of another of goods or money to any value, by violence *or putting him in fear*." 4 WILLIAM BLACKSTONE, COMMENTARIES *241 (emphasis added).

And multiple treatises, including Blackstone's, make clear that the fear element of common law robbery could be induced by threats of something other than violence. As Blackstone explained, "extorting money or [any] other thing of value by means of a charge of sodomy may be robbery." *Id.* at *244 n.14; *see also, e.g.*, WILLIAM L. CLARK & WILLIAM L. MARSHALL, TREATISE ON THE LAW OF CRIMES 791 (Melvin F. Wingersky ed., 6th ed. 1958) ("If a man threatens to accuse another of . . . sodomy, and thereby obtains property from him, the law regards it as a robbery . . . ."); 2 FRANCIS WHARTON, TREATISE ON THE CRIMINAL LAW OF THE UNITED STATES 352 (7th ed. 1874) (noting robbery charges involving threats of a sodomy accusation "and similar means"); 2 WILLIAM OLDNALL RUSSELL & CHARLES SPRENGEL GREAVES, A TREATISE ON CRIMES AND MISDEMEANORS 133 (9th Am. ed. 1877) (noting robbery by extortionate "threats to accuse" another). Robbery came to encompass these threats because they would "so injure a person that fear of [them] would naturally cause [a victim] to give up his property." WILLIAM L. CLARK, JR., HANDBOOK OF CRIMINAL LAW 377 (3d ed.

1915); *see also White v. United States*, 863 S.E.2d 483, 484–492 (Va. 2021) (surveying the common law).

While common law robbery by extortionate threats was limited to accusations of sodomy or an infamous crime, some statutes evolved to include robbery by "extort[ing] money or other things [through] threat[s] [of] a prosecution for any other crime." ROBERT DESTY, COMPENDIUM OF AMERICAN CRIMINAL LAW 502 (1882). Indeed, the Supreme Court has noted that using an accusation of sodomy to extort money from the victim has been classified as extortion in some state statutes and as robbery in others. *United States v. Nardello*, 393 U.S. 286, 294 (1969) (citing Kansas statute of robbery in the third degree).

In sum, as LaFave's treatise states,

> "[t]he scope of robbery grew gradually: formerly the offense seems to have been confined to cases of actual violence to the person; but in later times it has been extended to constructive violence by putting in fear, and not only to cases where property has been taken or delivered under a threat of bodily violence to the party robbed, or some other person, but also where the fear has resulted from apprehension of violence to the habitation and property, *or has been occasioned by threats of preferring a charge of an infamous crime* [i.e., sodomy or attempted sodomy]."

WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 20.3 (3d ed. 2024) (emphasis added) (internal quotations and citations omitted). The upshot of the common law is that some non-violent extortionate threats rose to the level of robbery.

Accordingly, the bright line between robbery and extortion that the government seeks to draw is not so clear. And, as a result, the government's "old soil" argument has far less force.

The same is true with the government's insistence that Congress incorporated the common law into the bank robbery statute. One clue suggesting that Congress rejected old soil in the world of federal bank robberies is that it maintained the same maximum penalty for bank robbery committed by force and violence, intimidation, or extortion, which departs from the common law's application of greater punishment for robbery than extortion. *See* 18 U.S.C. § 2113(a); *Harris*, 916 F.3d at 955 (quoting *Commonwealth v. Froelich*, 326 A.2d 364, 368 (Pa. 1974)). The Supreme Court's interpretation of § 2113 further suggests Congress rejected old soil in drafting the bank robbery statute. The Court has read other subsections in § 2113 as departing from their various common law roots. *Bell v. United States*, 462 U.S. 356, 360 (1983) (finding bank larceny in § 2113(b) "[went] beyond the common-law definition of larceny"); *Carter v. United States*, 530 U.S. 255, 256, 264–67 (2000) (noting § 2113(a) and § 2113(b) "bear a close resemblance to the common-law crimes of robbery and larceny," but "neither term appears in the text" and "the canon on imputing common-law meaning [thus] ha[d] no bearing on [the] case").

What's more, the text of § 2113(a) and its legislative history further show that common law principles Congress may have brought into the Hobbs Act disappear in the bank robbery statute. Take the focus on consent as an element of extortion and a historical difference between extortion and robbery. J.W. EHRLICH, EHRLICH'S CRIMINAL LAW 260 (Matthew Bender & Co. 1960) ("The element of extortion that the taking of the property must be with the consent of the person from whom it is obtained distinguishes extortion from robbery." (citation

omitted)); ROLLIN M. PERKINS, CRIMINAL LAW 327 (The Foundation Press 1957) (noting the "distinction" between "statutory extortion and robbery by intimidation" is whether the victim "consents" to giving up property); *see also* CLARK & MARSHALL, *supra*, at 794 ("Extortion is the obtaining of the property of another, with his consent induced by the wrongful use of force or fear or under color of official right."). The government notes this distinction in its brief and highlighted it at argument.

Whatever work "consent" does in the common law and in early statutory definitions of extortion, it appears Congress imported that into the Hobbs Act. *See* 18 U.S.C. § 1951(b)(2) (defining Hobbs Act extortion as "obtaining . . . property from another, *with* [the victim's] consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right" (emphasis added)); *see also Ocasio*, 578 U.S. at 297 (Hobbs Act extortion involves obtaining property with consent while robbery involves obtaining property against the victim's will). But in the bank robbery statute, Congress neglected to give extortion any definition. *See* 18 U.S.C. § 2113(a). This omission is significant. In *Nardello*, the Court refused to define "extortion" in the Travel Act solely by reference to the common law because Congress declined to define the term and the context and history strongly suggested that Congress intended a broader meaning for the term than common law extortion. 393 U.S. at 292–96. Likewise here, the legislative history suggests that Congress may have viewed extortion in the bank robbery context differently: the House Report accompanying the 1986 amendment specified "[t]he term 'extortion' as used in 18 U.S.C. § 2113(a) means obtaining property from another person, *without the other person's consent*, induced by the wrongful use of actual or threatened force, violence, or fear." H.R. REP. NO. 99-797, at 33 (1986) (emphasis added).

The government insists that the language in the House Report contrary to the common law meaning of extortion must have been a typo, and that the report actually meant to say that bank robbery by extortion is a taking completed *with the other person's consent*. *See* Appellee Br. 18 n.7; Oral Arg. Tr. 65. That is one possible interpretation, and we do not need to definitively interpret the House Report to resolve this case. Nevertheless, we observe that the government cites no evidence to support its contention that Congress imported extortion's common law tradition wholesale into the bank robbery statute. Further, we do not ordinarily presume that a Congressional report does not mean what it says. *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 161 n.1 (2021) (courts may apply "scrivener's error" doctrine when construing statutes only in those "unusual" and "exceptional circumstances" where the "obvious" intent of Congress is contrary to the plain text (citations omitted)). Instead, it seems equally likely that the House Report reflects a rejection of the legal fiction that money taken due to an extortionate threat during a bank robbery should be considered as taken "with the consent" of the bank. As stated by one court, "the use of the concept of consent in this context is not necessarily the most informative method of distinguishing between the crimes" of robbery and extortion. *Froelich*, 326 A.2d at 368. Yet another court has said the use of "consent" to distinguish extortion from robbery "is at best a distinction without a difference." *People v. Krist*, 296 N.W.2d 139, 141 (Mich. App. 1980); *see also* LAFAVE, *supra*, § 20.4(b) (noting that "in spite of the different expressions" of "against the will of the victim" and "with the consent of the victim" used to distinguish robbery from extortion, "there is no difference here, for both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done" (cleaned up)).

20

## C.

We next consider whether any binding precedent compels us to disregard § 2113(a)'s text, structure, and common law and statutory history. The Court in *Richardson v. United States*, 526 U.S. 813, 817 (1999), noted in dictum that "force" and the "threat of force" are two "means" to commit the same element in § 2113(a)—and there is little daylight between that characterization of means and the proposition that violence, intimidation, and extortion are different means to commit bank robbery. Still, neither this Court nor the Supreme Court has explicitly addressed the bank robbery statute's divisibility as to extortion. The government concedes that our recent decision in *Carr*, 946 F.3d at 599, "is not directly controlling here because it did not address [A]ppellants' claim." Appellee's Br. 18.

According to the government, "[e]very federal court of appeals that has addressed this issue has similarly concluded that § 2113(a) is divisible between robbery and extortion." *Id.* 19. We are not persuaded. We start with the decisions from the Second, Ninth, and Eleventh Circuits. The last of those, *In re Jones*, No. 16-14106-J, 2016 U.S. App. LEXIS 23578 (11th Cir. July 27, 2016), does not help the government. *Jones* assumed that "in every § 924(c) armed bank robbery case, the federal indictment will make clear that the companion conviction is an armed bank robbery, rather than some other offense criminalized by § 2113(a)." 2016 U.S. App. LEXIS 23578, at *12. The factual presumption of the *Jones* court is fatally undermined by the list of indictments Perkins cites, each of which charged bank robbery by force, violence, intimidation, *and* extortion in a single count. Perkins Reply Br. 14–15.

The government fares no better with *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2016) (per curiam), and *United States v. Evans*, 924 F.3d 21, 28 (2d Cir. 2019). *See* Appellee's Br. 19. The *Watson* Court stated, in cursory fashion, that § 2113(a) "contains at least two separate offenses, bank robbery and bank extortion." 881 F.3d at 786 (citing *United States v. Jennings*, 439 F.3d 604, 612 (9th Cir. 2006); *United States v. Eaton*, 934 F.2d 1077, 1079 (9th Cir. 1991)). *Jennings* and *Eaton*, the cases cited in *Watson*, do not support the government's divisibility argument here; they neither conducted a divisibility analysis nor addressed in any way whether force and violence, intimidation, and extortion are alternative means or elements. The same is true with the government's cite to *Evans*, which simply relied on *Watson* to summarily reject an indivisibility argument. 924 F.3d at 28. The Second Circuit stated in passing that it "need not address Evans's argument regarding bank robbery 'by extortion,'" *id.*, because it "agree[d] with [*Watson*] that § 2113(a) 'contains at least two separate offenses, bank robbery and bank extortion.'" *Id.* (quoting *Watson*, 881 F.3d at 786); *see also Collier v. United States*, 989 F.3d 212, 219 n.9 (2d Cir. 2021) (citing *Evans* to again say the Second Circuit follows the Ninth Circuit's *Watson* decision).

Last in line for the government's out-of-circuit authority is *King v. United States*, 965 F.3d 60 (1st Cir. 2020). There, the Court found the bank robbery statute divisible as to extortion. *Id.* at 67–71. *King* is also not persuasive, primarily because it rests on the same argument as the government does here—that § 2113(a) "tracks the common law differences between the offenses of robbery (a taking against the victims' will) and extortion (obtaining with the victim's consent)." *Id.* at 68 (citations omitted). But, as discussed, the common law differences between robbery and extortion are far more facile than the government (and *King*) represents, and we are

convinced that Congress took a different tack in § 2113(a). *See supra* Section II.B.

At bottom, the government's reliance on purported unanimity among our sister circuits lacks force. We opt to follow *Mathis* and exercise our judgment in determining § 2113(a)'s "single, best meaning." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024). Subsection 2113(a) is indivisible.

**D.**

The parties also address what a "peek" at the record documents tells us about the divisibility of § 2113(a). *Mathis* instructed that courts need only look at record documents if the plain text and caselaw are unilluminating. 579 U.S. at 518–19. And, as we have explained, it remains an open question in this circuit whether or how *Mathis*'s instructions to consider state court decisions and record documents such as indictments might translate to the non-ACCA context. We do not answer that question in this case, where the text clearly supports indivisibility and the reasoning in non-binding out-of-circuit caselaw does not point us to the opposite answer.

We note only, as the belt to accompany our suspenders, that Burwell's and Perkins's citations to charging documents further suggest § 2113(a) is indivisible. Charging documents cannot charge "separate offenses in a single count." 5 WAYNE F. LAFAVE ET AL., CRIMINAL PROCEDURE § 19.3(d) (4th ed. 2024) (citations omitted); *see also United States v. Klat*, 156 F.3d 1258, 1266 (D.C. Cir. 1998). Yet, the government has indicted defendants in a single count using the trio of bank robbery methods (force and violence, intimidation, and extortion) on multiple occasions, Perkins Reply Br. 14–15, which shows that each is a means to commit the single offense

of bank robbery. We do not credit the government's response that these examples constitute mere "sloppy drafting" that should not "'override' other 'clear indications'" that the statute is divisible. Appellee's Br. 26 (quoting *United States v. Furlow*, 928 F.3d 311, 322 (4th Cir. 2019)). For one, there are no "clear indications" that § 2113(a) is divisible, as we have previously explained. *See supra* Sections II.A, II.B. Second, the government has not offered any evidence to suggest that the indictments reflected sloppy drafting rather than a policy decision to charge defendants for bank robbery by any of three available means. Here, for example, where the facts indicated that Burwell and Perkins committed bank robbery by force and violence, the indictment did not include the alternative means of intimidation or extortion.

Likewise, model jury instructions for the Seventh and Ninth Circuits and at least one district court treat force and violence, intimidation, and extortion as alternative means of committing the single offense of bank robbery. The Seventh Circuit model instructions define the third element of bank robbery as "[t]he defendant acted to take such [money; property; specific thing of value] by force and violence, or by intimidation." O'Malley et. al., Fed. Jury Prac. & Instr. § 57:03 (7th ed. 2024 Update). Further, the Seventh Circuit model instruction specifies that "[t]he statute, at § 2113(a), ¶ 1, *includes a means of violation for whoever 'obtains or attempts to obtain by extortion*.' If a defendant is charged with this means of violating the statute, the instruction should be adapted accordingly." *Id*. (emphasis added).

Similarly, the Ninth Circuit model instructions describe the first element of bank robbery as "the defendant, through force and violence or intimidation, [[took] [obtained by extortion] [[property] [money] [something of value]] belonging to or in the care, custody, control, management or

possession of [specify financial institution]." MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT (2022 ed.) (emphasis omitted). Likewise, this instruction describes obtaining money by extortion as simply another means of committing the offense, the same as by use of force and violence or by intimidation. *See also* Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* 375 (2024 ed.) (bank robbery's second element is "that the taking was by force and violence or by intimidation *[or the obtaining was by extortion]*" (emphasis added)). In *United States v. Goodridge*, 392 F. Supp. 3d 159, 178 (D. Mass. 2019), the Court concluded that because the First Circuit model instructions "do not include 'extortion' as a means of committing bank robbery," the instructions "indicat[e] bank extortion is a separate offense." We do not find that using an omission in this manner to prove the point is compelling—not only because there are multiple model instructions to the contrary, but also because the First Circuit model instructions do not elsewhere provide a separate instruction for the purported "separate offense" of bank extortion. *See* PATTERN CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE FIRST CIRCUIT 258–61 (D. Me. Internet Site ed. Feb. 26, 2024). Accordingly, a look to charging documents and model jury instructions would require the same conclusion as the plain text does on the indivisibility of § 2113(a).

## III.

For these reasons, we hold that bank robbery under 18 U.S.C. § 2113(a) is indivisible as to extortion and therefore does not qualify as a "crime of violence" under 18 U.S.C. § 924(c) in Burwell's and Perkins's cases. We vacate both § 924(c) convictions and remand to the District Court with

instructions to determine expeditiously whether to release Burwell and Perkins immediately.

*So ordered.*